Case number 318-0621. In re Mary M.T. People of the State of Illinois Appley versus Mary M.T. Appeyant. Good afternoon or good morning whatever time it is. I think we've switched over to the afternoon. You know this oral argument by Zoom is a great convenience to all of us but occasionally we want run into a couple of bumps in the road. So you will see you are not going to have a panel of just two there will be three of us. Justice Litton is also on this panel but he will be listening to the oral arguments and participating in our deliberations. He's just we just can't get him here right now. So with that said are you both ready? Yes. Mr. Kale is that correct? Correct. It's nice to see you. You may proceed when you're ready. Okay good afternoon. May it please the counsel. My name is Vincent Kale. I'm an attorney with the Legal Advocacy Services, a division of the Guardianship and Advocacy Commission and we've been appointed to represent Mary T. the Appellant. Today I am seeking a reversal of the involuntary admission order from the trial court in Peoria County. I will divide my argument into two points. One the trial court failed to comply with section 3-805 of the Illinois Mental Health Code when implied an impermissible standard to deny Mary T a chance to represent herself and two the trial court failed to comply with section 3-811 when it wrongfully ordered disposition that was not available. I'm going to first want to give you some background. A petition for involuntary admission was filed on September 18, 2018 and a hearing date was set for September 25, 2018. Prior to the hearing, Mary T informed her attorney that she wanted to represent herself. On the date of the hearing, Mary T attorney told the trial judge that Mary T would like to represent herself. The trial judge then performed a brief inquiry and ruled that Mary T could not represent herself and it would be in her best interest to have an attorney. After a full evidentiary hearing, the court ruled Mary T to be committed to McFarland Mental Health Center up to 60 days. In mental health cases, when a person wants to represent themselves, the trial judge should look to section 3-805 of the Mental Health Code which states if a person is subject to involuntary admission on an inpatient basis, they should be represented by counsel. A hearing shall not proceed when a respondent is not represented by counsel unless after conferring with counsel, the respondent requests to represent himself and the court is satisfied that the respondent has the capacity to make an informed waiver of his right to counsel. In this case, prior to court, Mary T informed her counsel that she wanted to represent herself. Once the trial court heard that request, they conducted a brief inquiry to see if Mary T had capacity to waive counsel. The court asked Mary T about her education. Mary answered a question about her education. The court asked Mary T about if she can read or write the English language. Mary T responded yes. Then the court asked Mary T a compound question. You understand today the person seated to the left is a trained attorney. Throughout this process, he will be asking a series of questions, a series of questions that is about your liberty. Do you Mary T, where did she take law at? Mary T answered in high school. The court then switched subjects and then asked Mary T, when is the last time you worked? After Mary T explained that she had volunteered for a civil work program at the age of 66, but she was considered too old, the court then made their finding and said, I'm going to make sure you have an attorney represent yourself throughout the process and found it is in your best interest to have an attorney represent you. The trial court did not wait for Mary T to answer its compound question, which may have provided answers as to Mary T's understanding of the role of counsel and the type of case being tried against her, which included her liberty. The trial court also made no finding that Mary T lacked capacity to waive counsel. Illinois appellate courts have noted under case law, the Illinois mental health court does not address the standard for trial court to determine whether a respondent lacks capacity to waive counsel. In the second district, in the Wendy T case, the court looked how criminal cases use the standard for competency to waive counsel is the same as competencies to stand trial. They stated the standard should apply the same in civil mental health hearings. That standard is the respondent is unable to understand the nature and purpose of the proceeding or assist in their defense. In the fifth district, in the Michael F case, the court uses standard, whether the court properly informed the respondent of his right to counsel, the nature of the hearing and possible consequences of the hearing, regardless of what standard is used or questions the judge asks, the Illinois mental health code does not identify the best interest standard. Sample questions that the judge could ask to see if a respondent has capacity to waive counsel is, do you understand why you're here today? Do you understand the role of counsel? Do you understand the consequences of the hearing today? Do you understand that you will be held at the same standard as any attorney? Those questions would show whether respondent understands the nature of the hearing and were possible consequences of the hearing. By applying an impermissible standard, the trial court failed to comply with section 3-805 of the Illinois mental health code. Questions of statutory compliance are questions of law subject to deliverable review. My second point, while this case needs to be reversed, is the trial court wrongfully ordered Mary Tue to a disposition that was not available. In the mental health proceedings, the trial court first must find a person is subject to then they must decide the least restrictive setting for such treatment. In deciding the least restrictive treatment, the court must consider whether a facility is both appropriate for and available to a respondent. Such decisions must be based on evidence. The Illinois mental health court requires a written predispositional report and one of the requirements of the report is a written report including information on appropriateness and availability of alternative treatment setting. Here, Dr. Adelari, the state's only witness, wished to commit Mary to McFarland Health Center, a state-operated facility, because she needed to go there for a longer period of time. Mary Tue was at UnityPoint Methodist, which Dr. Adelari considered an acute care facility. The state presented no testimony from the Department of Human Services generally or McFarland Health Center specifically that McFarland has been designated as a placement for Mary or that McFarland was appropriate for and available to Mary. The only testimony was from Dr. Adelari on October 2, 2018, when the court asked her to predict how long it would take for Mary to go to a state-operated facility. Dr. Adelari answered that an unnamed social worker at UnityPoint Methodist talked to an unnamed person from the state system and there's a possibility that a dead bed will be available in two or three days. The state only filed a treatment plan portion of the predispositional report. The treatment plan contained no information about McFarland Mental Health Center or any alternative disposition. The only written information from McFarland from October 9, 2018, a week after Mary was committed to McFarland and a letter stating that Mary Tue does not meet the criteria for admissions because she has geriatric, medical, and ambulatory issues. The trial court erred by ordering Mary Tue to McFarland Mental Health Code. If this trial court confirms the trial court's decision, respondent's due process will be denied because they will not get a full inquiry to ascertain if they have capacity to waive counsel and they can be ordered to a disposition that is not appropriate or available. In this case, the judge tried to do an inquiry. However, the questions that were presented to Mary did not show that Mary lacked capacity and it's kind of showing a progression. We've had the courtesy case where a judge without any inquiry ruled a person cannot represent themself and the court ruled that's reversible error. In this case, the court made an inquiry but not a full inquiry and the court never ruled that Mary lacked capacity. I think the trial courts need more guidance to guide them of not specific questions that they need to say, but they should have a category of questions such as, do you understand the nature of this hearing? Do you understand the consequences? Do you understand, like I said, you'll be held at a higher standard. And also if this trial court were to affirm, then we would have somebody be in order to placement or disposition that's not available. And the analogy I would submit to you, if this was an involuntary treatment case, the court would not order a medication that's not available to the hospital to get somebody. And so this would be analogous to that, that the court ordered somebody to a 3-805 and section 3-811 of the Illinois Mental Health Court, the involuntary admission order needs to be reversed. Are there any questions? I have no questions for you, Mr. Cale. Justice Wright, you were muted. I'm sorry, I didn't hear you. See, remember what I said earlier about these bumps in the road? That was one of them. I'm glad that you asked for questions because, well, there is Justice Litton. I'm glad you asked for questions because I have a couple for you. I know that, was it the second district, Wendy T. and Michael F. talk about different standards or different approaches to competency. Do you have a preference? Which one are you advocating for? I'm advocating for the standard that would show that a respondent has, knows the nature why they're there. And the standard that the nature that the respondent knows the consequences against them, that the standard that the respondent would know that they're going to be held to the same standard. I don't want to get into, like I said, specific questions, but I also think that there should be a ruling that says the person lacked capacity. Hold on a second. Like I said, I don't have a preference over the second district or the fifth district, um, but I do think the question should get to the, uh, if the respondent has the capacity to waive counsel and, um, otherwise we would get the trial court asking our respondent, do you know who the president is? And if they give a wrong answer, oh, well then you can't represent yourself. However, if the trial court knows, well, I need to know if the respondent even knows why they're here today, what are the consequences and they're held to that same standard as an attorney, then those questions will get to the, uh, the other respondent has capacity to waive counsel. If I interpret your answer correctly, um, you're saying that either case, either standard would be fine with you. The difficulty here is that the judge made no ruling at all with respect to competency. Is that correct? Yes. The judge made no ruling that Mary T lacked capacity to make a good way of counsel. The judge used a best interest standard. Um, and if you go back and look at the record, it seems like Mary can answer the judge's questions how basically a normal person was. So if you have somebody, if somebody were to ask me, what's my education, I'm probably going to start with my highest level of education and go Mary took her question literal and said, here's my middle school. Here's my high school. Well, the judge then was like, well, let me talk to you about your work history. And then Mary was Mary went off on all these tangents. And it's almost seems like the judge was like, you know, what you have a trained attorney sitting next to you. I think it's better that you have this person. And that's not the standard that the judge should use. The standard should be she lacked capacity to the way counsel. Okay. Um, I think in reading the record that it's fair to say the judge was being kind. She wasn't trying to trample anybody's rights that she, you know, the, the reference to best interests. I think she really was trying to act in the best interests of the person in front of her. Um, I would like you to address mootness on that point. Um, because I don't see any allegations that counsel did a poor job and Mary would have been better off, uh, if she had represented herself and we are limited, really, we're not supposed to enter advisory opinions. Uh, once the issue is moot and the appointment of counsel, you know, it's, it's moot right now. We have two cases that set forth adequate standards and you're not asking us to establish a third standard. So why is it important to you that we not find this issue with respect to counsel is moot? Well, first I would say the state conceded that this case falls under one of the mootness, the mootness exception. Um, and there are two with this case that I will talk about. One is a capable of repetition yet avoiding review. As you know, from the record, this was not Mary T's first time being in the hospital. The doctor testified that in the year that the case was heard for her, she's been there four times. So when you have somebody who's been at the hospital multiple times, this is likely that this can happen to Mary T again. She can, she would go to the hospital again, file another petition and she want to represent herself. So because of her prior hospitalization is reasonably expect to some action to take against her in the future. Also, um, this also has a public interest exception, um, statutory compliance with a, the Illinois mental health code is in the public's interest and we want judges to comply with this statute. And in this case, there are two statutes that the judge did not comply with. And so we would say because of the, uh, capable yet avoiding review in the public's interest, those are two exceptions to mootness. Both your answer and your oral argument were timed perfectly. You have now run out of time, but on an aside, I will say that even though the state has conceded the issue shouldn't be treated as moot. Sometimes we disagree with both of you. So that's not a guarantee that we're going to rule in favor of mootness versus non-mootness. With that, this craft, am I pronouncing your name correctly? Are you ready to proceed? Yes. Thank you very much. You may proceed. May it please the court counsel. My name is Kelly craft and I represent the people of the state of Illinois in this matter. This court should affirm the lower courts ruling that respondent lack capacity to weave her right to counsel. And then McFarland mental health center was the appropriate and least restrictive alternative for respondent. In regard to capacity, the trial judge complied with section 3-805 of the mental health code. When the trial judge determined that respondent lack capacity to represent herself. Under section 3-805, anyone subject to an a respondent may waive the right to counsel only if the trial judge is satisfied that the respondent has the capacity to make an informed waiver. The determination of whether respondent has the capacity to waive her right to counsel is within the discretion of the trial judge. And the state finds that point very important. The determination of whether respondent has the capacity to waive her right to counsel is within the discretion of the trial judge. In regard to the statute, it is very clear that it states that a hearing shall not proceed when a respondent is not represented by counsel unless after conferring with counsel, the respondent requests to represent herself and the court is satisfied that the respondent has the capacity to make an informed waiver of her right to counsel. In this case, as opposing counsel noted, the respondent requested to represent herself. However, the trial judge was not satisfied that respondent had the capacity to do so. To determine whether the respondent has the capacity to make an informed waiver of her right to counsel, the trial judge should make inquiries concerning the respondent's mental ability, intelligence, and understanding of the basic purpose of counsel. Additionally, a trial judge should be certain a respondent has the legal or represent herself. The trial judge should ask questions requiring answers that would show whether the respondent has a basic understanding of what the hearing is about and the role of counsel. Here, the trial judge conducted a thorough inquiry prior to determining respondent lack capacity to waive counsel. The trial judge considered the petition also that was filed by the medical staff to involuntarily commit respondent. In addition to that, he did inquire about respondent's education as opposing counsel noted. The trial judge started off with the hearing saying that I want to ask you about your education. Tell me about your education, ma'am. She responded, my education was when I went to a gifted school. Okay, where asked the trial judge. It was Lincoln School. It was the principal was a Holmes, Thomas Holmes. He had a wife, Mrs. Holmes. After that, asked the trial judge. The respondent said, I didn't really know her first name. After that, where did you go? Asked the trial judge. I went to Roosevelt. Okay, after that, I went also to, because we had a fire at the house, I had to go transfer into different territory. So, I went to Woodruff. The trial judge said, okay, and you finished Woodruff High School, correct? Respondent said, I didn't finish these high schools because this was because we had fires. We moved. When our house was fixed, we moved back. The trial judge said, okay, after going to Woodruff, did you start working? Is that what happened? The respondent said, I went to Manuel. Then you went to Manuel, said the trial judge. Did you graduate from Manuel? The trial judge said, then what? Respondent said, I would like to clarify that I went to work when I was very young. When I was four years old, I went and I cleaned for 11th. But the police also asked me to tell them anything that was going on and that was out of the ordinary in that household. The trial judge then said, can you read and write the English language? Respondent said, yes, I can. The trial judge then continued on with several other questions, asking the respondent about if she knew the nature of the proceedings and if she understood the basic purpose of counsel. Opposing counsel did note the question that the trial judge asked. The opposing counsel said it was a compound question. The trial judge did say, you understand that today the person seated to your left is a trained attorney. Throughout this process, he will be asking questions, a series of questions. This is about your liberty. Do you understand that? The respondent said, I'm not worried about it because I took law. The trial judge said, where did you take law? The respondent said, I took law when I was in the gifted school. I took law when I was in manual high school and I also took business law and constitution law. As opposing counsel noticed, the trial judge then asked respondent about the last time that she was employed. She discussed being employed and then after she was finished with that answer, the trial judge said, I appreciate that. And the judge said, at this time, the court has found that I am going to make sure that you have an attorney represent you throughout this process. So with that being said, one of the things the court was doing, I had to listen to some of the information provided. I understand you stated to the court that at Lincoln Middle School, Lincoln School, you had law classes and you also had business law. I do believe at this time the court finds it's in your best interest to have an attorney represent you. With that being said, please proceed counsel. So the state would submit that the trial judge here performed a thorough inquiry in determining whether respondent lacked capacity. The state understands that opposing counsel says that the judge applied an impermissible standard, what he refers to as a best interest standard. However, there is nothing in the statute under section 3805 that says the trial judge needs to specifically say the words lacked capacity. Yes, did the trial judge said, I believe at this time the court finds it's in your best interest. Sure, the state agrees. She said, in your best interest, but magic words that need to be said. All it states is that a hearing shall not proceed when a respondent is not represented by counsel, unless after conferring with counsel, the respondent requests to represent herself and the court is satisfied that the respondent has the capacity to make an informed waiver of her right to counsel. And again, as stated at the beginning, the determination of whether a respondent has the capacity to waive her right to counsel is within the discretion of the trial judge. And after performing the inquiry, the trial judge determined that it was in respondent's best interest to have an attorney represent her. Therefore, under issue one, the state respectfully requests that this court affirm the lower court's finding that respondent lacked capacity to waive counsel. Moving on to issue two, the state submits that the trial judge properly found that McFarland Mental Health Center was appropriate and the least restrictive alternative for respondent. Opposing counsel discussed a letter that was received from the Department of Human Services. What's important to note about this letter, in which the Department of Human Services stated that McFarland was not available to respondent and not appropriate for respondent, is that this letter did not come until one week after the trial judge made her ruling granting the transfer of respondent from UnityPoint to McFarland. The information in this letter from Department of Human Services was not discussed during respondent's involuntary commitment hearing or the subsequent hearing on disposition. A reviewing court must determine the issues before it based upon the evidence presented to the trial court. The trial judge did not have this information from DHS when the trial judge made the decision that McFarland was appropriate and the least restrictive alternative for respondent. A court's ruling is proper if the involuntary hospitalization is the least restrictive alternative. The code does not state that a court must make a specific finding that a certain treatment and place is the least restrictive alternative. Again, here the state submits that the trial judge properly found that McFarland Mental Health Center was the most appropriate setting for respondent. The record was clear at the time of the hearing that McFarland was a long-term facility. It treats chronically ill patients, offers more services than UnityPoint. The psychiatrist who treated respondent testified that respondent's frequent hospitalizations were not helping respondent stabilize and that respondent should be transferred from Unity to a long-term state facility where she would have access to different services and guardianship. Also wanted to have a place that had outpatient care and do much better with coordinated and followed and follow-up care. Respondent had been discharged to a nursing home previously. In one particular case, one day after being discharged to a nursing home, respondent came back to Unity and then was readmitted. It was the treating psychiatrist's opinion that respondent should not be released back to her residence or stay on the current floor at Unity. Even at the conclusion of the first hearing on disposition, the trial judge wanted to continue this matter for additional questioning, so she set up another hearing. At that next hearing, she asked the psychiatrist about the timing of the transfer to McFarland and the psychiatrist stated that a transfer to McFarland could take place in two to three days. The social workers at McFarland, but that a transfer could take place in two to three days. And that is what the trial judge at the time made her decision on. She also took under consideration that respondent was on a lockdown floor at Unity for patients 65 years old with psychosis or mental health issues. Took into consideration that her diagnosis was psychotic disorder unspecified involving delusions, paranoid thoughts, and psychotic behaviors. Also, respondent's history of mental illness and hospitalizations dated back to 2008. And throughout the past year, the psychiatrist said that respondent had visits to several different places, Methodist and Unity hospitals, just to name a few. So there were alternatives considered. Remaining at Unity Point, returning to the psychiatrist, however, made clear that these were not appropriate locations for respondent considering her medical and psychiatric needs. Respondent's condition was worsening according to her treating psychiatrist. She refused to speak to her psychiatrist at Unity. Her safety, as well as the safety of others, was a concern. And the trial judge made the proper decision to take the recommendation of respondent's treating psychiatrist and grant the transfer to McFarland. And this was based on the evidence that was presented to the trial judge at that time. Between the testimony of the treating doctor and the additional information available to the trial judge, including the petition, the inpatient certificates, the treatment plan, the state submits that the trial judge had sufficient evidence to determine that McFarland was the least restrictive alternative for respondent. Just because DHS sent a letter one week after the determination was made that McFarland was appropriate does not mean that at the time the trial judge made her decision that it was an incorrect decision. Therefore, considering the evidence available to the trial judge, the state would ask that this court affirm the lower court's ruling granting the transfer to McFarland. Do you have any questions for me? You're following Mr. Kahle's lead. And of course, I do. And then we'll see if any of the other panel members do. What is it about what Judge Washington said that, or what is it about the find she was not competent? In other words, what did she say? What did the respondent, what did the Mary T. say? When you take a look in reading the record, and I went over some of the comments that Mary T. provided to the trial judge. In reading them, one may say that it doesn't appear from the record, just reading them from the record, that she sounds like she would lack capacity to waive her right to counsel. However, the trial judge was there and was able to ascertain the mental state of the respondent, her behavior, her demeanor, how she was responding. I did not see any of that, but the trial judge did. And the main thing that the state would argue in regard to that is that trial judge does have the discretion to determine whether she has the right to waive her capacity. So that determination is up to the trial judge, who has a chance to firsthand see and witness the respondent. The line of questioning was pretty extensive from our standpoint. Not certain how long it went on, but did ask about the education. When you take a look at the case law, education is one of the things that it says that a trial judge should consider in determining whether a respondent lacks capacity. Also, he did ask if she understood about the basic purpose of counsel and her legal background. Where did you take law? And that's my point, though. Those answers were responsive to the questions. She clearly understood the questions and she gave appropriate answers. But I understand that the trial judge does have an advantage to us and that she gets to see and hear the witnesses. That observation by me is also probably why the judge didn't use the magic words, because sometimes those words are triggering to people with mental health issues. If she said that Mary lacked capacity or was not competent, sometimes that is not the best terminology to use. I picked on Mr. Kahle about the mootness issue. Would you discuss why you think, which factor weighs more heavily in favor of your concession on this issue? From the state's perspective, in taking a look at this case, it appeared that it didn't appear, it is true, that Mary T has had a long history. So it's likely to recur, is that correct? The repetition exception, we argued, would apply, because it is likely, since she has a history dating back to 2008, that this likely would occur again. And so the state felt that because there must be, there was a substantial likelihood for the recurrence of this, that a resolution would have some bearing on a similar issue. Thank you for your answer. Are there any other questions? Okay, you both did a very nice job of arguing. Oops, Mr. Kahle, I am sorry. There's another bump. I almost didn't give you a chance for rebuttal. You are entitled to rebuttal. Okay. The state just argued it's reasonable to infer by the nature of the proceedings of an involuntary admission that Mary T lacked capacity to waive counsel and that the judge looked at the petition and the certificates. In the state of Illinois, anybody over the age of 18 can file a petition for involuntary commitment. You need somebody with qualifications to do the certificate. However, those are just pleadings. Those are just allegations. You cannot, in the state of Illinois, people with mental illness are presumed competent until proven otherwise. You cannot just say, well, this is for a mental health hearing and look at the allegations in the petition that she doesn't have competency. So we would argue until the court ruled that somebody is incompetent, they're presumed to be competent. The trial court never found that Mary T lacked competency to waive counsel and said the trial court used the best interest standard. Nowhere in the record that the trial court determined that Mary T lacked capacity to make informed waiver. The state contends that the magic words are not required. And you can say the magic words are not required and the judge can say, well, I'm not going to find that you have capacity, you lack capacity, but the judge can go into their ruling of why you're not going to pick and say, well, based off of some of your answers, it doesn't look like you understand why you're here today. Based off of some of your answers, you don't even know what the consequences are. So I'm going to appoint an attorney. In this case, we don't have any of that. We have the judge going through their questions and seems like she didn't like Mary's answers and the judge is like, it's in your best interest. That is what's said, not she lacked capacity, but after hearing all of this, it's in your best interest. And in looking at, and I would agree with the state, we don't know the context of how Mary was answering because we just have what she said. However, if you look at the record, we don't have Mary coming in, interrupting the judge. We don't have Mary talking over anybody. We don't have Mary saying, well, you asked me this question and now you went to another subject. Let me go back to this first subject that you asked me about. We have a person saying they want to represent themselves. We have a person saying, judge is going to ask you some questions and you have a person answering those questions. So yes, there were no magic words, but the judge did not do a full inquiry to see if Mary lacked capacity. The judge did an inquiry and then said, you know what, it's in your best interest. By applying the best interest standard instead of determining Mary lacked capacity, the court failed to follow section 3-805. Now, as we know, McFarland did not accept Mary for placement due her geriatric and medical needs. The state at the trial level has the burden to prove the issue of restricted disposition. Consideration of the disposition should include the proposed facility that is appropriate for and available to the respondent. Here, McFarland was not appropriate for or available to. The state argues today that based on the information available to the trial Mary T. should go to McFarland, but the doctor did not have all the facts to support that Mary should go to McFarland. The fact is Mary T. owned her own apartment in Peoria. Mary T. had a home health care aide with her and Mary T. was taking all the prescribed medications from Dr. Adelard since the beginning of her admission. And here, since McFarland was not appropriate for and did not comply with section 3-811. Now, I understand that a judge can only go off based off of the facts that are presented for them. However, we have this case where Mary was, the doctor said, all those reasons why Mary can't do outpatient, why Mary can't go back to her apartment, that Mary has to go to this long-term facility. And then we come to find out that this if you're going to order somebody to these dispositions, we need to first make sure that it's available to them. And the state would have said today that, well, the doctor talked to a social worker, but then the social worker talked to somebody from the Department of Human Services, but that is just a hearsay statement off a hearsay statement. The judge in making a ruling to make that disposition is available to, and this position is appropriate for, since that was not the case, since that was not the case, we feel the state did not comply with section 3-811 and Illinois mental health code. And we actually had to reverse. Again, your timing is impeccable. Are there any questions for Mr. Vail, Kale? No questions, Mr. Kale. As I started to say earlier, you both did a nice job of arguing the case and fielding questions from the court. We will now take this matter under advisement. We will conference the case and hopefully get you a disposition without undue delay. Thank you very much for your arguments today.